Weber *v.* Weitling.

WEBER *vs.* WEITLING and others.

1. Proceedings by foreign attachment are not void, merely because the defendant was a resident of the state at the issuing of the attachment. The foundation of the proceedings, and of the jurisdiction of the court, is not the non-residence of the defendant, but the affidavit of the plaintiff's belief of his non-residence.

2. When such affidavit is regular, and made in good faith, this court cannot collaterally inquire into the fact of non-residence, and declare the proceedings void.

3. The estate of a lunatic may be proceeded against by attachment; and he need not appear and be defended by his next friend.

4. Mere inadequacy of consideration will not avail to set aside a deed, unless accompanied by fraud, or unless it be so gross as to imply fraud.

5. A bid of $100 at a fair public sale, for property worth $1500, but upon which there were liens, amounting to $800, there being no pretence of fraud, held not to be so grossly inadequate as to set aside the deed.

The cause was argued on the pleadings and proofs.

*Mr. Dixon,* for complainant.

*Mr. Lyons,* for defendants.

THE CHANCELLOR.

The suit is by Jacob Weber, guardian of August Hill, a lunatic, to set aside a deed by auditors in an attachment against the lunatic, to the defendant, Louise Weitling, for the lunatic's lands, which she afterwards conveyed to the defendant, Justus Hill, a brother of the lunatic. The lunatic, who had resided on this property in Hudson City, was sent to the asylum at Trenton, in August, 1861, under the conduct of Weber, who was one of the chosen freeholders of the county. In March, 1862, the wife of the lunatic abandoned her husband's home, taking with her his furniture, and his only child, who has since died. She took up her residence with Weber, who was a widower, and has ever since resided with him as his house-keeper. She declined, when examined

as a witness, to answer whether she was living with him as his wife; this was done under the advice of counsel, on the ground that the court had stricken from the answer the charges of her adulterous intercourse with Weber, as impertinent and scandalous. Her evidence was competent, but if guilty, she had the right to refuse. The lunatic, after his wife had for some time been living with Weber, was brought from the asylum, and placed in the county alms-house, at Snake Hill. Being quiet and harmless, he was allowed to go about; he went several times to see his child, at Weber's, where his wife was living. He went to his old home, and found it occupied by strangers, to whom his wife or Weber had rented it. He at last left the alms-house and the county, and in March, 1864, went to reside with his brother, Justus Hill, in the city of New York, where he has ever since continued to reside, working at his trade as a shoemaker, and partially earning his support.

On the twentieth of August, 1864, an attachment was issued against him as a non-resident debtor, from the Hudson county Circuit Court, by the defendants, Ernest Weitling, and Louise, his wife, for a debt due to her. The land in question was attached, and the suit proceeded regularly to judgment; and under it, the land was sold at public auction, and conveyed by the auditors to Louise Weitling, in September, 1865. The price bid was $100; the property was subject to a mortgage for $500, and was worth $1500 or $2000. A few days afterwards, she conveyed the same to Justus Hill, for $1150, or about $600 above the mortgage. The debts, costs, and expenses of sale, in the attachment suit, were nearly $300.

In November, 1865, the wife of the lunatic applied to this court for a commission of lunacy. This commission issued; and upon the return of the inquisition finding him a lunatic, the proceedings were remitted to the Orphans Court of Hudson county, who appointed Jacob Weber the guardian of the lunatic.

The complainant contends, that the deed should be set

aside, on the ground that the proceedings in attachment were void, the lunatic at the time being legally a resident of this state, and not subject to an attachment ; that an attachment, or other proceedings at law, cannot be had against a lunatic, unless he appear and be defended by his next friend ; and that the sale, if not void, should be set aside in equity, on the ground of gross inadequacy of consideration.

The proceedings by foreign attachment are not void, merely because the defendant was a resident of the state at the issuing of the attachment. By the act, the foundation of the proceedings, and of the jurisdiction of the court, is not the non-residence of the defendant, but the filing of an affidavit by the plaintiff that he believes him to be a non-resident. If such affidavit is made in good faith, the proceedings are not void. The court, pending the proceedings, will inquire into the truth of the affidavit, and if it appears that the affidavit is not true, will arrest the proceedings and quash the attachment. In this case the affidavit was regular, and made in good faith, and the court cannot collaterally inquire into the fact of non-residence, and declare the proceedings void.

But in fact, the lunatic was not, at the attachment, a resident of this state. He had no home here ; his wife had abandoned him and his home, and his house was rented to and in possession of strangers. He had no family. The question is not as to his domicile, but his residence. A man may not change his domicile, he may do nothing to acquire or establish a new domicile, but may have abandoned his residence. If a resident of the state sells his homestead, and goes to Europe with all his family, with the intention of remaining a few months, or a few years, and then returning and purchasing a new home somewhere in the state, and residing here, he acquires no new domicile ; he is a citizen of New Jersey, but he has no residence here. The test of residence under the attachment act, is whether a person has such residence in the state as that a summons can be served. If he has not, his creditors are entitled to some remedy against his estate here. Now this lunatic had no home in this state where a

summons could be served by leaving a copy with a member of the family. He had a residence in New York where he had lived and worked for months, and where he still continues to live. It is not necessary to decide that he had acquired a new domicile, or that a lunatic may have intellect enough to form the intention necessary to a change of domicile, although unable to manage his affairs.

An action at law can be maintained against a lunatic, and the judgment against him is valid. *Shelford on Lun.* 395; *Kernot* v. *Norman,* 2 *T. R.* 390 ; *Nutt* v. *Verney,* 4 *T. R.* 121 ; *Robertson* v. *Lain,* 19 *Wend.* 650.

If a personal suit can be maintained at law against a lunatic, there is no reason why a proceeding against his estate by attachment is not valid.

For mere inadequacy of consideration, equity does not set aside a deed, unless accompanied by fraud, or unless the inadequacy is so gross as to imply fraud. This was a fair public sale by auditors; no fraud is pretended ; the price was inadequate. The property was worth $1500 at least, and the bid was only $100 ; but there was a mortgage for $500, and Mrs. Weitling's debt was near $300. The consideration is not so grossly inadequate as to call upon the court to set aside the deed.

The bill must be dismissed, with costs.